

**DISTRICT ATTORNEY'S OFFICE**
THREE SOUTH PENN SQUARE
PHILADELPHIA, PENNSYLVANIA 19107-3499
215-686-8000

| | |
|---|---|
| Direct extension: | 215-686-5706 |
| Fax: | 215-686-8725 |
| john.goldsborough@phila.gov | |

May 9, 2017

Honorable Linda K. Caracappa
United States District Court
U.S. Courthouse
601 Market Street, Room 3042
Philadelphia, Pennsylvania 19106-1789

  Re: **Naranjo v. Coleman, et al.**
     **Civil Action No. 13-7383**

Dear Chief Judge Caracappa:

  Enclosed please find a copy of our Response to the Petitions for Writ of Habeas Corpus, filed today.

       Respectfully submitted,


       /s
       JOHN W. GOLDSBOROUGH
       Assistant District Attorney


/jwg
Enclosure
cc: Isaac Naranjo, #FJ-4369

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ISAAC NARANJO                    :              CIVIL ACTION

      V.                           :

BRIAN COLEMAN, ET AL.            :              NO. 13-7383

## RESPONSE TO THE PETITIONS FOR WRIT OF HABEAS CORPUS

On November 18, 2001, two days after Kirenia Garcia had obtained her second protection from abuse (PFA) order against petitioner, who was her ex-boyfriend, he broke into her house, chased her into a neighbor's house, sliced her with a box cutter several times in the face, neck, head and shoulder, and left her for dead.  On March 10, 2003, a jury sitting before the Honorable Rayford Means in the Philadelphia Court of Common Pleas convicted him of attempted murder, aggravated assault, and numerous other offenses (CP-51-CR-0212551-2002). After direct appeal, state collateral review under the Pennsylvania Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541 et seq., PCRA appeal, remand for resentencing, a premature federal habeas petition, state-court resentencing, federal dismissal without prejudice and appeal to the Third Circuit, state-court appeal from resentencing and affirmance, remand from the Third Circuit specifically for consideration of the claims in petitioner's original and no-longer premature petition, and the district court's grant of petitioner's motion to file an amendment to his original petition, respondents now answer:  petitioner's petitions must both be denied.  His claims lack merit, and several may not be reviewed at all.

## Factual and Procedural History

Ms. Garcia and petitioner began dating in August of 2001.  Almost immediately, petitioner moved in with her and her two young sons and mother.  By October, their relationship began to sour, after Ms. Garcia confronted petitioner about "hitting on" a female friend of hers.  Peti-

tioner's answer was to slam her against the bathroom door, then push her down the stairs.  Ms. Garcia obtained an emergency Protection from Abuse order ("PFA"), but, when petitioner begged her to forgive him, she decided not to appear in court to obtain the final order.  However, petitioner did move out of her house (N.T. 3/6/03, 79-88).

On November 12, 2001, Ms. Garcia was forced to obtain a second emergency PFA order after petitioner attempted to strangle her.  She was instructed to appear in court on November 20, 2001, to obtain the final order.  With the assistance of a police officer, on November 17, 2001, she served petitioner notice of the PFA order and the hearing date (See N.T. 3/6/03, 88, 89). Shortly after petitioner was served, he telephoned Ms. Garcia and threatened that she "would not look the same" when she went to court -- and that she "may not even make it there" (N.T. 3/6/03, 91).

The next day, November 18, 2001, Ms. Garcia was at home in the early evening.  Her young sons were playing in the living room while she was washing dishes.  Ms. Garcia picked up the telephone to call her sister.  There was no dial tone.  Recalling that petitioner had cut her telephone line two weeks earlier, she assumed he had done so again and considered going to use her next-door neighbor's telephone.  Just then, however, she noticed a shadow at the top of the stairway inside of her house.  She realized it was petitioner, who, it turned out, had broken in through a bedroom window by climbing up in the back.  Due to his threats the day before, she immediately ran down the street to the home of the only neighbor who appeared to be home, Luis Morrero, and called the police, informing them of her PFA order.  She then ran back home to get her sons.  When she stepped inside, she saw petitioner coming down the stairs so quickly that he appeared to be falling.  He repeatedly threatened, "I'm going to get you."  She tried to scoop up both her sons but lost her grip and ran for her life down the street.  She raced back in-

side Mr. Morrero's house and screamed for help.  Petitioner ran after her inside Mr. Morrero's house, grabbed the back of her sweater, and pulled her to the kitchen floor.  He straddled her, quickly slicing her face, head, neck, and shoulder with a box-cutter while yelling that he was going to kill her.  Mr. Morrero, a smaller man, unsuccessfully attempted to pull the larger petitioner off of her.  Fearing for her life, Ms. Garcia decided to lie still as if she were dead.  Petitioner then fled as police approached.  The kitchen was covered with her blood.  Ms. Garcia immediately told police the name of her attacker and later identified him in court.  She was taken by ambulance to Temple University Hospital, where nearly 100 stitches were required to close the wounds to her face, neck, scalp and shoulder.  The cuts were very close to her windpipe and the major arteries and veins in her neck.  Her trauma surgeon, Amy Goldberg, M.D., testified that she was very lucky to be alive (N.T. 3/6/03, 65-72, 94-109, 113, N.T. 3/7/03, 16-19).

On March 10, 2003, the jury convicted petitioner of attempted murder, aggravated assault, simple assault, recklessly endangering another person, burglary, criminal trespass, possessing an instrument of crime (PIC), terroristic threats, and contempt of court for violating the PFA order. On May 8, 2003, the court sentenced Naranjo to an aggregate term of 35 to 70 years of incarceration, placing extensive reasons on the record for its upward departure from the standard suggested state sentencing guidelines.

Petitioner filed both a post-sentence motion and a notice of appeal pro se, which together caused procedural confusion.  The trial court wrote an opinion for appellate review dated May 30, 2003, a copy of which is appended to Exhibit A (described below).  But, due to the pending post-sentence motion, counsel (still the Defender Association at that time) discontinued the direct appeal as premature on June 10, 2003.  Two weeks later, petitioner filed a timely petition pursuant to the Pennsylvania Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541 et seq.  New coun-

sel, Douglas Earl, Esq., was then appointed, and reinstatement of direct appeal rights was granted in 2004.

Counsel's brief to the Superior Court on direct appeal is attached as Exhibit A. Petitioner claimed (1) the court's having bound and gagged him for a brief period of time during jury selection denied him a fair trial, and (2) the trial court erred by denying his pretrial request to replace counsel. On October 19, 2005, finding these claims lacked merit, the Superior Court affirmed the judgment of sentence. A copy of the Superior Court's unpublished memorandum opinion is attached as Exhibit B. Commonwealth v. Naranjo, 889 A.2d 116 (Pa. Super. 2005) (table).

On May 8, 2006, petitioner filed another PCRA petition seeking reinstatement of his right to file a petition for allowance of appeal with the Pennsylvania Supreme Court. New counsel, Peter A. Levin, Esq., was appointed and filed an amended petition in late 2006. Following a brief PCRA hearing, reinstatement was granted in 2007, and petitioner filed an authorized nunc pro tunc petition for discretionary review in that court. The court declined review on May 20, 2008. Commonwealth v. Naranjo, 953 A.2d 541 (Pa. 2008) (table).

On August 21, 2008, petitioner filed a pro se PCRA petition, plus a lengthy pro se memorandum. Counsel was appointed, and on September 20, 2011, filed a letter pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988), in which she explained that, after conducting a conscientious examination of the record, she had determined that the issues petitioner wished to raise were devoid of merit. A copy of counsel's Finley letter is attached as Exhibit C.[1]

On September 28, 2011, petitioner filed a pro se "Amended PCRA petition" acknowledging and

---

[1] Exhibit C also includes counsel's simultaneous separate petition to withdraw, stating that she had advised petitioner of his right to retain counsel or to proceed pro se, as prescribed in Commonwealth v. Friend, 896 A.2d 607, 614 (Pa. Super. 2006). See also Commonwealth v. Widgins, 29 A.3d 816, 818 (Pa. Super. 2011).

opposing the <u>Finley</u> letter, and on October 24, 2011, a second pleading, entitled "Opposition," which also opposed the <u>Finley</u> letter.  The Court sent petitioner a notice of intent to dismiss without a hearing pursuant to Pa. R. Crim. Proc. 907 on November 4, 2011.  On December 2, 2011, Judge Means entered an order dismissing the PCRA petition.[2]

Petitioner filed a notice of appeal.  On December 19, 2011, petitioner filed two handwritten "Statements of Questions Raised on Appeal"; one containing 109 issues, the other 119.  On February 2, 2012, Judge Means ordered petitioner to file a **concise** statement of errors complained of on appeal in accordance with Pa. R. App. Proc. 1925(b) within 21 days of the date of the order.  A full 61 days later, on April 4, 2012, petitioner filed another 1925(b) statement, dated March 20, 2012, followed by a motion to file it <u>nunc</u> <u>pro</u> <u>tunc</u>.  On August 29, 2012, Judge Means deemed all the claims waived.

A copy of petitioner's primarily handwritten and extremely lengthy <u>pro</u> <u>se</u> brief to the Superior Court, with many exhibits, is attached as Exhibit D.  In its May 23, 2013, unpublished memorandum opinion, the Pennsylvania Superior Court reviewed the nine claims in petitioner's <u>pro</u> <u>se</u> March 20, 2012 statement of matters complained of, as elaborated on in Exhibit F to his brief (itself a more conventional typed appellate brief that tracked that statement of matters complained of).  <u>Commonwealth v. Naranjo</u>, 81 A.3d 1002 (Pa. Super. 2013) (table).  A copy of the opinion is attached as Exhibit E.

The Superior Court found merit to petitioner's first <u>pro</u> <u>se</u> claim, determining that his sentence of 20-40 years for attempted murder was illegal because the jury had not found that the at-

---

[2] As the Superior Court later found, Judge Means omitted express language permitting counsel to withdraw, which unfortunately exacerbated confusion in the ensuing PCRA appeal.

tempted murder resulted in serious bodily injury, as is required to support that sentence.  Accordingly, the court remanded for resentencing.  Exhibit E at 10-13.

The Superior Court otherwise affirmed the PCRA Court's dismissal of the petition, finding meritless or waived petitioner's other contentions that:  the sentence was illegal because two inchoate offenses, attempted murder and PIC, should have merged for sentencing purposes;  the court gave inadequate jury instructions on aggravated assault, attempted murder, and recklessly endangering another person; all prior attorneys were ineffective for (a) failing to investigate, develop, and present an alibi defense, and for (b) failing to seek proper jury instructions directing jurors not to infer guilt based on petitioner's failure to prove his alibi; the trial court committed reversible error by refusing to provide any type of alibi instruction after petitioner presented surprise alibi testimony; all counsel were ineffective for failing to raise a violation of petitioner's right to a speedy trial under Pennsylvania Rule of Criminal Procedure 600;  all counsel were ineffective for failing to object to and raise on appeal an alleged violation of Pennsylvania Rule of Criminal Procedure 564 governing amendment of indictments, because the prosecutor allegedly added an attempted murder charge not listed in the criminal complaint;  the trial court committed fraud when it charged petitioner with attempted murder on its own motion;  and the trial court committed reversible error in its aggravated assault charge.  Exhibit E at 8-9 (listing issues).

Both sides sought discretionary review from the Pennsylvania Supreme Court.  On December 2, 2013, both petitions for allowance of appeal were denied.  Commonwealth v. Naranjo, 81 A.3d 76 (Pa. 2013) (table) (denying both 331 EAL 2013 and 358 EAL 2013).  Upon the conclusion of that PCRA round of state appellate review, the case was remanded to the Court of Common Pleas for re-sentencing.

On December 16, 2013, however, before the record on appeal had even been remitted to the Court of Common Pleas, petitioner filed a premature Petition for Writ of Habeas Corpus in this Court. Doc. 1. In it, Naranjo brought solely the two claims he had exhausted on direct appeal: (1) the court's having bound and gagged him for a period of time during jury selection denied him a fair trial, and (2) the trial court erred by denying his pretrial request to replace counsel. Doc. 1 at ECF pages 5-9 (form pages 8-12).[3]

On March 5, 2014, William Christopher Montoya, Esquire, entered his appearance on petitioner's behalf in the Court of Common Pleas.

In this Court, on July 7, 2014, based purely on timing and having nothing to do with claim exhaustion, the Commonwealth answered that the petition was premature and should be dismissed without prejudice pending petitioner's resentencing, under Burton v. Stewart, 549 U.S. 147, 156-57 (2007) (per curiam). Doc. 12. On July 31, 2014, this Honorable Court issued a Report and Recommendation agreeing that the petition be dismissed without prejudice as premature and that no stay issue. Doc. 13.

On August 4, 2014, petitioner filed a "Motion to Respond," doc. 15, later treated as objections. He expressed a belief that among his habeas claims was a premature one concerning the then-pending resentencing, but also asking that his habeas petition be immediately considered, as well as that, if not, it be stayed and held in abeyance. He later filed a similar motion on August 14, 2014, doc. 16. These confusing handwritten motions stressed the complexity of the

---

[3] Naranjo confusingly attached several extensive lists of claims, with irregular numbering, to his habeas petition, writing the title "Grounds for Habeas Corpus" at the top of each page. See doc. 1, pages 17-27 (ECF pagination). Some of those claims concerned the propriety of the then-pending state resentencing proceeding on remand. Further inspection revealed that these were exhibits (referred to at ¶¶ 11(a), (b), and (c) of the petition), listing claims he contended he had earlier exhausted in state court. Naranjo later expressed his belief, however, that he did intend to pursue at least one of these as a federal habeas claim in that 2013 habeas petition.

procedural situation in which he found himself, as well as his having written them through an interpreter.  (The Third Circuit later found that petitioner had expressed a desire to proceed in habeas solely with the two exhausted claims from direct appeal that were stated in his 2013 petition, as explained below, though it did not say exactly where or when; respondents assume it was in those motions.)

In state court, on August 19, 2014, represented by Mr. Montoya, petitioner was resentenced by Judge Means to an aggregate total of 25-50 years of imprisonment.  Petitioner filed a prompt, counseled, post-sentence motion, generally claiming that the new sentence was excessive.  That motion was eventually denied by operation of law.

Meanwhile, back in federal court, petitioner filed a pro se motion expressing outrage that he had been resentenced in state court while the federal habeas proceeding was ongoing, doc. 17. He also filed a motion which he captioned "Motion for Leave to File an Amended Petition" but which, in its body, asked permission to supplement his original 2013 federal habeas petition with another issue, doc. 18.

On March 19, 2015, the district court, per the Honorable Juan R. Sánchez, denied without prejudice petitioner's motion to supplement his habeas petition, doc. 18, granted and denied various of petitioner's many other motions, approved and adopted this Court's Report and Recommendation, denied a stay, dismissed without prejudice, and denied a certificate of appealability (COA).  Doc. 19.  The court also expressed some concern, however, that if Naranjo's exhausted claims were now considered and denied, any subsequent habeas petition concerning resentencing might be barred as successive, per Burton.  Doc. 19 at 1-2 n.1.  It further found that petitioner had exhausted the two direct-appeal claims in his habeas petition.  Doc. 19 at 2 n.2.

Petitioner then filed a notice of appeal and application for a COA in the United States Court of Appeals for the Third Circuit, representing that he had asked to proceed in the district court with only the two claims in his habeas petition which he had exhausted on direct appeal.

Meanwhile in state court, petitioner appealed, through attorney Montoya.  A copy of his brief to the Superior Court is attached as Exhibit F.  To it is appended a copy of Judge Means' PCRA court opinion for appellate review, dated May 11, 2015.  Petitioner claimed his new sentence was excessive, an abuse of discretion, and manifestly unreasonable for several specific reasons.  Exhibit F at 7-17.

On March 31, 2016, a panel of the Third Circuit granted a COA.  Finding petitioner had expressed a desire to proceed with his two exhausted claims from direct appeal, it ordered the parties to show cause why the district court's order should not be summarily vacated and the case remanded for consideration of those two claims.  The court added that, under Magwood v. Patterson, 561 U.S. 320, 341-42 (2010), where a new sentencing judgment intervenes between two habeas petitions, the later one is not considered second or successive, at least as to claims arising from the resentencing – and thus, contrary to the district court's expressed concern based on Burton, it is not clear that any subsequent habeas petition in this case would be barred as successive.

On April 12, 2016, the Pennsylvania Superior Court affirmed the judgment of sentence in an unpublished memorandum opinion, finding petitioner's resentencing claim waived.  Commonwealth v. Naranjo, 2016 WL 1436365 (not reported in A.3d) (Pa. Super. 2016) (unpublished, not precedential).  Specifically, it found that, in derogation of state law regarding appeals based on the discretionary aspects of sentencing, petitioner had not (in his very general post-sentence motion) presented the sentencing judge with the same specific complaints he was voicing on appeal.  He had, therefore, not provided the sentencing court an opportunity to address them, to re-

consider, or to modify its sentence in light of those points, causing waiver.  A copy of the Superi-

or Court's opinion is attached as Exhibit G.  It appears petitioner did not seek allowance of ap-

peal to the Pennsylvania Supreme Court.

Shortly thereafter, in April of 2016, in federal court, petitioner filed what he again entitled

a motion for leave to file an amended habeas petition, but which, as before, specifically request-

ed that it be considered an amendment or supplement to his initial, original petition.  Doc. 25 at 4

¶7, 4 "wherefore" ¶.   He attached his proposed "amended" federal habeas petition (i.e., his

amendment to his original petition), doc 25-2, which correlated with a massive, wordy memo-

randum of law he had filed almost simultaneously, doc. 23.

On August 31, 2016, the Third Circuit vacated the dismissal without prejudice, finding

petitioner had "specifically elected to proceed on the exhausted claims raised in his [2013] §2254

petition," and remanded for consideration of those two claims.  It reiterated that, per Magwood, a

post-resentencing separate habeas petition would not necessarily be considered second or succes-

sive.  Order, 8/31/16.

On remand, the district court (doc. 28) granted petitioner's motion to file his amended pe-

tition (doc. 25) (actually an amendment to the initial petition).  The court docketed his amended

petition as doc. 29 (previous 25-2).  In it, petitioner articulates seven claims, referring to his pre-

viously filed thick memorandum of law (doc. 23).  The amended petition does not contain or re-

articulate the two claims exhausted on direct appeal, on which the Third Circuit had remanded.[4]

This Court has ordered respondents to answer, but has not specified which petition, or

both.  Doc. 30.  Due to the Third Circuit's order, the district court's having granted petitioner's

---

[4] Generally, amended pleadings supersede original pleadings, including in habeas; however, courts
have found an exception when the amended pleading is intended to supplement rather than super-
sede the original pleading.  See Braden v. United States, 817 F.3d 926, 930 (6th Cir. 2016).

motion, and the fact that petitioner asked in that second pro se "motion to amend" that his amended petition be considered an amendment to the original petition and not supplant it, respondents will here answer both the 2013 petition and the amended petition at 25-2 (later 29).[5]

In his 2013 petition, petitioner claims:  (1) he was denied a fair trial when the trial court ordered him bound and gagged for approximately 45 minutes during jury selection; and (2) the trial court erred by denying his pretrial request to replace counsel.  Doc. 1.  In his amended petition, petitioner claims:[6]  (3) PCRA counsel was ineffective for failing to accuse trial counsel of being constitutionally ineffective for not interviewing petitioner before trial, for not investigating or discussing defense options, for not preparing for trial, and for being inexperienced; (4) all prior counsel were ineffective for failing to adequately investigate, develop, and present an alibi defense and for failing to seek proper instructions directing jurors not to infer guilt based upon petitioner's failure to prove his alibi; (5) the court's jury instructions on aggravated assault, attempted murder, and recklessly endangering another person were faulty; (6) the trial court erred in refusing to give alibi instructions after petitioner testified to his own alibi; (7) all counsel were ineffective for failing to object to and raise on appeal an alleged violation of Pennsylvania Rule of Criminal Procedure 564 governing amendment of indictments, because the prosecutor allegedly added an attempted murder charge not listed in the criminal complaint; (8) the trial court committed fraud when it charged petitioner with attempted murder on its own motion; and (9) the trial court's jury charge on aggravated assault was erroneous.  Docs 29/25-2 (amended petition), 23 (memo).

---

[5] Pro se pleadings must be liberally construed.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

[6] Respondents will use consecutive numbering.

Respondents answer that relief must be denied.  The claims lack merit, and some are un-reviewable.

## **STANDARD OF REVIEW**

"Federal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights."  <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011) (quoting <u>Calderon v. Thompson</u>, 523 U.S. 538, 555-556 (1998)). "It disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority."  <u>Richter</u>, 562 U.S. at 103 (quotation marks and citation omitted).  "In light of the profound societal costs that attend the exercise of habeas jurisdiction, [there are] significant limits on the discretion of federal courts to grant habeas relief."  <u>Calderon</u>, 523 U.S. at 554-555 (quotation marks and citation omitted).

Those limits were strengthened by Congress in 1996 in significant changes to the Reconstruction-Era federal habeas statute, now also known as AEDPA after the legislative title of those reforms.[7]  "AEDPA greatly circumscribes a federal habeas court's review of a state court decision," <u>Johnson v. Carroll</u>, 369 F.3d 253, 257 (3d Cir. 2004), and is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." <u>Richter</u>, 562 U.S. at 103.  AEDPA achieves that end by establishing a modified form of <u>res judicata</u>:  if a claim has been adjudicated in the state courts, federal courts have no power to overturn that decision, unless one of the narrow exceptions set forth in the statute applies.  <u>Id.</u>

Under AEDPA, if a federal constitutional claim was adjudicated on the merits in a state

---

[7] The Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996), amending, <u>inter</u> <u>alia</u>, the federal habeas statute at 28 U.S.C. §§ 2241 <u>et</u> <u>seq.</u>, effective April 24, 1996 ("AEDPA").

court, a federal habeas court may not grant relief unless the adjudication of the federal claim by the state courts:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[8]  If a reasonable basis existed for the factual determinations reached in the state court, which includes implicit as well as explicit findings, then habeas relief is not warranted on that basis.  See, e.g., Campbell v. Vaughn, 209 F.3d 280 (3d Cir. 2000).

Federal review under section 2254(d)(1) must be made in light of the same record that was before the state court, not a different one. Cullen v. Pinholster, 563 U.S. 170, 180-182 (2011). A state court's factual determinations are presumed correct, and the burden of rebuttal is on petitioner, by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This highly deferential standard requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions "against [Supreme Court] precedents as of 'the time the state court renders its decision.'"  Greene v. Fisher, 565 U.S. 34, 38 (2011), quoting Pinholster, 563 U.S. at 182.

Further:

> Under the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court.  28 U.S.C. § 2254(b).  If the state court rejects the claim on procedural grounds, the claim is barred in federal court unless one of the exceptions to the doctrine of Wainright v. Sykes, 433 U.S. 72, 82-84 (1977), applies.  And if the state court denies the claim on the merits, the claim is barred in federal court unless one of the exceptions to § 2254(d) set out in §§ 2254(d)(1) and (2) applies.  Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state pro-

---

[8] Claims arising under state law provide no basis for federal habeas review or relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Pulley v. Harris, 465 U.S. 37, 41 (1984); Riley v. Harris, 277 F.3d 261, 310 n.8 (3d Cir. 2001).

ceedings are the central process, not just a preliminary step for a later federal ha-beas proceeding, see id., at 90.

Richter, supra, 562 U.S. at 103.

Factual findings do not need to be explicit to be upheld as presumptively correct. Campbell. "[T]he factual conclusions which the federal habeas courts [are] bound to respect in assessing respondent's constitutional claims [are] ... the finding[s] of the [State] trial court ... and the inferences fairly deducible from those facts." Marshall v. Lonberger, 459 U.S. at 435. See LaVallee v. Della Rose, 410 U.S. 690 (1973) (findings of fact to which presumption of correctness attaches include implicit findings necessary to the legal conclusions reached). "This presumption applies to the factual determinations of both state trial and appellate courts." Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001); see Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996) (citing and discussing Parke v. Raley, 506 U.S. 20, 36 (1993), and Sumner v. Mata, 449 U.S. 539, 546 (1981)).

It is the judgment, i.e., the result, of the state courts on the claim, and not its articulated reasoning, if any, that is the subject of habeas review.  28 U.S.C. § 2254(d); Richter, 562 U.S. at 98-99. Thus, absent "clear" indication to the contrary, federal courts must presume that claims fairly presented to a state court and implicitly rejected by that court were "adjudicated on the merits." Johnson v. Williams, 133 S. Ct. 1088, 1096-1097 (2013).  That remains true even if the state court issued no opinion or, if it did, said nothing about the federal claim.  Richter, 562 U.S. at 98-99.  See also Woodford v. Visciotti, 123 S.Ct. 357, 360 (2002) (under AEDPA's deferential standard of review, state court decisions must be given "benefit of the doubt").[9]  The habeas

---

[9] In Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001), the Third Circuit held that even where AEDPA's deferential standard of review does not apply because a claim was not "adjudicated on the merits in State court proceedings" under § 2254(d), the state courts' factual determinations are still pre-

….(footnote continued on next page)….

statute "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter. It "does not require citation of our cases -- indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). See Priester v. Vaughn, 382 F.3d 394 (3d Cir. 2004) (relevant issue under AEDPA is not whether state court explicitly analyzed federal cases and principles, but whether resultant state-level disposition was consistent with federal law); Weeks v. Angelone, 528 U.S. 225, 237 (2000) (affirming Fourth Circuit's application of § 2254(d) deference to state court summary adjudication); Chadwick v. Janecka, 312 F.3d 597, 606 (3d Cir. 2002) (explaining that, in light of Weeks, § 2254(d) deference applies to even summary adjudications).

Similarly, in evaluating the decisions of the state courts (which are presumed to have applied federal law correctly), where the reasoning of the determination is not explicit, the federal court is required to begin its review with the state court's legal conclusion and to "reason backward" to the legal and factual premises that must logically have grounded it. See Campbell, 209 F.3d at 289-90, citing Marshall v. Lonberger, 459 U.S. 422 (1982).

In order to properly apply the standard, a federal habeas court must "determine what arguments or theories supported or… could have supported, the state court's decision; and then… ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Richter, 562 U.S. at 102 (emphasis added). See also Pinholster, 563 U.S. at 188 (same).

Similarly, where the state court issues an opinion, federal courts are required to presume that the state court decided all claims fairly presented to it on the merits even if the opinion fails

sumed correct, absent clear and convincing evidence to the contrary, under 28 U.S.C. § 2254(e)(1).

to discuss some of them. <u>Johnson v. Williams</u>, 133 S. Ct. 1088, 1095-96 (2013). Accordingly, where the state court has issued an opinion that addressed the claim in question, § 2254(d) deference is mandatory, even if the opinion fails to discuss every point or argument made by the defendant. <u>Premo v. Moore</u>, 562 U.S. 115, 129 (2011) (concluding state court's decision was reasonable in part based on ground not stated in the state court's opinion); <u>Collins v. Sec'y, Dep't of Corr.</u>, 742 F.3d 528, 548 (3d Cir. 2014) (state court's statements were "cursory," but AEDPA requires deference).

A state court decision is not contrary to clearly established Federal law simply because a snippet of the court's opinion arguably misstates the applicable standard, or an unreasonable application if it is poorly or unclearly written.  It is the state court's ultimate <u>decision</u> that is the focus of federal review and owed deference, and not the opinion underlying that decision. <u>Richter</u>, 562 U.S. at 105; <u>Lee v. Comm'r, Alabama Dep't of Corr.</u>, 726 F.3d 1172, 1211 (11th Cir. 2013) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence."); Means, <u>Federal Habeas Manual</u> § 3:70 (West 2014) ("Circuit courts are generally in agreement that § 2254(d)(1)'s 'unreasonable application' clause should be applied only to the result of a state court decision…") (collecting cases).

Were it otherwise, the habeas statute would invite federal courts to engage in the "grading papers" approach the statute was meant to preclude. <u>See Johnson v. Williams</u>, 133 S.Ct. at 1095-96 ("federal courts have no authority to impose mandatory opinion-writing standards on state courts"); <u>Coleman v. Thompson</u>, 501 U.S. 722, 739 (1991) ("[W]e have no power to tell state courts how they must write their opinions"); <u>Rompilla v. Horn</u>, 355 F.3d 233, 247 (3d Cir. 2004)

(state courts' "failure to discuss [decision] . . . to the satisfaction of the habeas petitioner or to the federal cour[t] is irrelevant"), rev'd on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); id. at 248 (deference applies "regardless of the length, comprehensiveness, or quality of the state court's discussion"); Simmons v. Beard, 356 F.Supp.2d 548, 557 (W.D.Pa. 2005) (warning that "grading papers" approach to state court opinions is "outmoded in the post-AEDPA era"). Accord Hernandez v. Small, 282 F.3d 1132, 1140 (9th Cir. 2002) (same); Hennon v. Cooper, 109 F.3d 330, 334-35 (7th Cir. 1997) (Posner, C.J.) (scrutinizing state courts' method of reasoning "would place the federal court in just the kind of tutelary relation to the state courts that [AEDPA was] designed to end").

The AEDPA created a standard that was "difficult to meet" because its purpose was to restrict habeas review and so that it would function as "a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." Greene v. Fisher, 132 S.Ct. 38, 43 (2011), quoting Richter, 562 U.S. at 102. "Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Richter, 562 U.S. at 102, citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

Under this deferential standard, a court "must first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Andrade, 538 U.S. at 71. See also Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004). "That statutory phrase refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). See also Johnson v. Carroll, 369 F.3d 253 (3d Cir. 2004). Unless the habeas court can identify a "specific legal rule" that was "squarely established" through Supreme Court precedent at the time the state court rendered its decision, it cannot be said that the decision of the state court is

contrary to, or an objectively unreasonable application of, such precedent, and the petitioner's claim must be rejected.  Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (noting numerous opinions of the Supreme Court that have made this requirement clear).  Where, although the Court has spoken, it has done so with a lack of clarity, there may be little that is "clearly established."   Lockyer v. Andrade, supra. In that instance, there can be no violation of § 2254(d)(1). "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous."  Mitchell v. Esparza, 540 U.S. 12, 17 (2003) (per curiam).

Once the applicable "clearly established federal law" is determined, petitioner must establish that the state court decision is either contrary to that precedent or an unreasonable application of that precedent.

Regarding the "contrary to" prong, the U.S. Supreme Court has stated:

A state-court decision is "contrary to" our clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Avoiding these pitfalls does not require citation of our cases -- indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.

Early v. Packer, 537 U.S. 3, 8 (2002) (citations omitted) (emphasis added).  See also Price v. Vincent, 538 U.S. 634, 640 (2003); Bell v. Cone, 535 U.S. 685, 694 (2002).  The Court has been careful to note that most cases will not fit into this narrow category, which is limited to direct and unequivocal contradiction of then-extant Supreme Court authority.  Williams, 529 U.S. at 405-407.

"Unreasonable application" means correct identification of the governing legal rule, followed by an objectively unreasonable – not just an incorrect – application of the rule to the

case's facts.  See, e.g., Woodford v. Visciotti, 537 U.S. 19, 25-26 (2002) (per curiam).

> When assessing whether a state court's application of federal law is unreasonable, "the range of reasonable judgment can depend in part on the nature of the relevant rule" that the state court must apply.  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  Because AEDPA authorizes federal courts to grant relief only when state courts act unreasonably, it follows that "[t]he more general the rule" at issue -- and thus the greater the potential for reasoned disagreement among fair-minded judges -- "the more leeway [state] courts have in reaching outcomes in case-by-case determinations." Ibid.; see also Knowles v. Mirzayance, 556 U.S. 111 (2009).

Renico v. Lett, 559 U.S. 766, 776 (2010).  The question under the statute is thus not whether the state court's decision was right or wrong, but whether it was reasonable.  Id.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Williams, 529 U.S. at 411.  Even if a federal court were to find error, if "it is at least reasonable to conclude that there was not, [that] means that the state court's determination to that effect must stand." Packer, 537 U.S. at 11. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

The Supreme Court has repeatedly reversed habeas courts that substitute their own judgment for that of the state court and fail to determine whether the state court's interpretation was reasonable, even if erroneous.  See, e.g., Parker v. Matthews, 132 S.Ct. 2148 (2012) (per curiam); Coleman v. Johnson, 132 S.Ct. 2060 (2012); Richter, supra; Premo v. Moore, 131 S.Ct. 733 (2011); Visciotti, supra.  Even if it were to agree with such independent judgment that there was error, if "it is at least reasonable to conclude that there was not, [that] means that the state court's determination to that effect must stand."  Packer, 537 U.S. at 11.  "[T]he only question

that matters under § 2254(d)(1) [is] whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law." Lockyer v. Andrade, 538 U.S. 538 U.S. 63, 71-72 (2003) (emphasis added).

The habeas statute thus "preserves [federal-court] authority to issue the writ in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further." Richter, 562 U.S. at 102.  It validates the "'presumption of finality and legality' that attaches to a conviction at the conclusion of direct [state] review." Calderon v. Coleman, 525 U.S. 141, 145-46 (1998), quoting Brecht v. Abrahamson, 507 U.S. 619, 633 (1993).

Finally, for a petitioner to qualify for habeas relief, there is an additional requirement: the alleged violation must have had a "substantial and injurious effect" on the outcome of the trial.  Brecht, 507 U.S. at 637 (1993).  See also Davis v. Ayala, 135 S.Ct. 2187 (2015); Fry v. Pliler, 551 U.S. 112, 121 (2007) ("We hold that in [Section] 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht, 507 U.S. 591, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in Chapman [v. California], 386 U.S. 18 [(1967)].").

None of petitioner's claims meets these extremely demanding standards.

**DISCUSSION**

1.    **The state courts reasonably found that the trial court did not abuse its discretion or deny petitioner's right to a fair trial when it had him bound and gagged briefly during jury selection.**

The first claim in petitioner's 2013 federal habeas petition was also his first on direct appeal in the state courts:  that the trial court abused its discretion and denied his right to a fair trial when -- after petitioner's recalcitrant and dangerous pretrial outbursts and misbehavior, and following ample warning -- the court briefly had him briefly bound and gagged during jury selection.  ECF Doc. 1 at 8 (ground one).  (The court ordered the restraints removed less than an hour later, when they were no longer necessary because petitioner had decided to behave, before the full jury had been selected.  The court also questioned individual panel members about their ability to be fair in light of anything they had seen, and later provided a proper curative jury instruction.)  The state courts reasonably found this claim lacked merit, after careful analysis of the facts and the law.  Because the state courts' denial of this claim was not an unreasonable application of United States Supreme Court holdings beyond all possibility for fair-minded disagreement, Richter, 562 U.S. at 102, federal habeas relief must be denied.

A.    **Factual background**

Analysis of this claim under the Supreme Court precedent reviewed below requires a detailed focus on what exactly occurred.[10]

On March 5, 2003, jury selection commenced.  A Spanish interpreter was provided for petitioner then and throughout.  Before the jury panel or petitioner was brought into the courtroom, the court initially placed on the record that, after two days of negotiation between both sides and consultation with his counsel (an assistant public defender, David Santee, Esquire,

---

[10] This factual discussion also encompasses petitioner's second habeas claim, which is related.

working with a more senior supervising assistant public defender, Andrew Gay, Esquire), petitioner had rejected a Commonwealth negotiated plea offer at the end of the previous day, and this third day was set aside for jury selection. Petitioner, however, was delaying matters by refusing to change into the civilian clothes his attorney had provided. Attorney Santee was making one last attempt in the back to convince his client to change into those clothes. Mr. Santee then returned, reporting that petitioner wanted him removed and a new attorney appointed. The court denied that request, finding counsel was qualified and acting in petitioner's best interests. It also placed on the record that the sheriff in the back had relayed to the court that petitioner had announced his intention to obstruct the trial.[11] The court found petitioner was behaving unpredictably, though it stated there was no indication of a medical or psychological problem, and that it was clear he simply did not want the trial to proceed. Counsel for both sides tacitly agreed. The court explained it had therefore instructed the Spanish interpreter to sit further away from petitioner than usual, approximately 15 feet from the counsel table, protected by a barrier. It also warned counsel for both sides to keep their guards up (N.T. 3/5/03, 1-5).

Petitioner was then brought into the courtroom and, before the jury panel entered, sought and was permitted to address the court directly. He asked again to have Assistant Defender Santee replaced, complaining both that he had only met him recently and that counsel was attempting to pressure him into pleading guilty. The court immediately corrected the latter accusation, telling him that preparations were now underway for his jury trial. (As to the former, as shown below, the court was also aware of Assistant Defender Gay's supervision and involvement earlier in the case, along with other members of the public defender's office, which often acts as a team.)

---

[11] The Philadelphia Sheriff's Office provides courtroom security, including escorting prisoners to and from the secure cells that are adjacent to the courtrooms but not visible from them (the "back").

Petitioner next complained that Mr. Santee had failed to provide him a personal copy of the pretrial discovery packet.  The court responded by inquiring into details and found that, as defense counsel agreed, the Commonwealth had provided full discovery to the public defenders' office, which is all that is required.  The public defenders did not need to give it directly to petitioner, and as a matter of policy do not.  The court again denied petitioner's request for new counsel, finding he had no means of income to hire private counsel, and that Mr. Santee was qualified and acting in his best interests.  Defense counsel then called for a sidebar, which is not of record.

During the sidebar, petitioner said to the interpreter, "Tell him that I'm not participating in this trial.  I'll not take a jury.  I will not pick anyone.  If he wants, I can do the trial against the wall because I will not participate in the trial."  The court then warned petitioner against further disruptions.  It placed on the record that petitioner had just announced in open court that he intended to disrupt the trial.  The court told petitioner he was to sit,[12] and stated it was giving him fair warning:  any further disruption would result in physical restraint and a contempt citation. At the prosecutor's suggestion, and as a courtesy, the court then permitted Mr. Gay to meet with petitioner in the privacy of the holding cell in the back; Mr. Gay thanked the court (N.T. 3/5/03, 6-13).

After that additional consultation, during a brief recess, petitioner was returned to the courtroom, and the full jury panel of 40 people was escorted into the courtroom for the first time. Almost immediately, petitioner became extremely disruptive, shouting in Spanish.  The court quickly had the sheriff remove him again to the holding cell in the back, presumably to cool off,

---

[12] The court later found in its opinion for appellate review that petitioner refused to sit in his chair beside defense counsel.  Trial court opinion at 8 (appended to Exhibit A).

and called counsel for both sides, the interpreter, and the stenographer into his anteroom in the back.  There, the court placed on the record that the court-appointed Spanish interpreter had informed the court of what petitioner was shouting as he addressed the judge:  "You f------ nigger. You f------ nigger.  You discriminate against Hispanics.  You f-----, I don't want you.  You tell that f------ nigger I don't want him."  Petitioner had also told Mr. Gay that he would kill himself and the judge would feel guilty.  Judge Means, an African-American, stated on the record that he was not personally offended by petitioner's comments and had been called "nigger" many times in his life; found that petitioner had intentionally continued to disrupt the proceedings despite the court's earlier fair warning to him, and had in fact intended to disrupt the full jury panel; and that because petitioner had been speaking in Spanish, most of the panel members probably did not understand all of what he had said.  Nevertheless, recognizing that petitioner's erratic behavior and persistent defiance of the court's instructions to control himself disrupted the proceedings and posed security risks for everyone in the room, the court did exactly what it had warned petitioner it would do:  it found petitioner in contempt and ordered that before returning to court, he would be gagged to stop his verbal outbursts, and would be shackled to ensure that he "will not be getting up with his outbursts."  (N.T. 3/5/03, 13-17).

The court then called for and brought an even more senior supervising public defender attorney, Richard H. DiMaio, Esquire, to speak with petitioner in the back, together with Elizabeth Hadayia McHugh, Esquire, another public defender attorney, as well.  Meanwhile, attorney Santee moved for a new jury panel.  The Commonwealth objected, and the court denied the request, stating:  "I feel that we have taken quite a bit of time and he may possibly disrupt a second and subsequent panel. I believe he would disrupt and try to taint them. That's why it is denied." (N.T. 3/5/03, 17-18).

Petitioner was then returned to the courtroom, restrained.  The court gave its opening in-structions to the entire jury panel.  Before individual voir dire commenced, out of the hearing of the jury, counsel sought the standard individual <u>voir</u> <u>dire</u> regarding gagging; the court ruled that since the jurors had seen his outburst, that would be too much detail and might be prejudicial. Instead, it ruled, it would ask an individual <u>voir</u> <u>dire</u> question of each juror regarding whether anything they had seen or heard would prevent them from giving petitioner a fair trial.  The first eight jurors were then chosen quickly, with that question included.  Approximately 45 minutes later, petitioner was removed from the courtroom for a routine 15-minute break.  During it, he indicated to the sheriff in the back that he would behave himself.  The court consulted with coun-sel for both sides, then ordered his gag and handcuffs removed, but warned that if he misbehaved again, he would be restrained again.  Petitioner then did behave himself for the remainder of that day, at the end of which he apologized articulately to the court, and the court accepted his apolo-gy.  Petitioner at that time renewed his requests for new counsel and for a personal copy of the discovery packet, and the court deferred action on those requests until the following day (N.T. 3/5/03, 17-18, 31-33, 34, 38, etc., 76-77, 111-115).

The following day, after further discussion between counsel and the court, and outside the hearing of the jury (which had by then been fully selected), the trial court again summarized for the record what had occurred regarding petitioner's disrupting the proceedings and being re-strained.  The court followed up on the requests for discovery and new counsel that petitioner had renewed <u>pro</u> <u>se</u> at the end of the previous day.  First, the court specifically inquired of Mr. Santee the dates on which various attorneys from the Defender Association had spoken with peti-tioner and represented him in court, and asked for details about his representation, including whether Mr. Santee felt prepared to try the case and whether he had acted on petitioner's con-

cerns.  Counsel answered that he was prepared, did not need a continuance, and had taken action. The court then again denied petitioner's requests for a personal copy of discovery and for replacement appointed counsel (N.T. 3/6/03, 4-9).

Defense counsel then himself summarized matters regarding the restraints, summarizing that the court had denied his motion for a new jury panel the previous day after finding the jury panel had not been tainted, and that petitioner had been cooperative and behaved well after that initial episode; nonetheless, he renewed his motion for a new jury.  The Commonwealth objected, stating that petitioner's behavior after the court's fair warning to him – both body language and words – had been intentional, and not just a refusal to participate but also an attempt to taint the jury.  A new panel, after the effort put in the previous day, would be a tremendous waste of time for everyone, and taxpayer resources.  The court had asked each juror if anything that had occurred would prejudice him or her in giving petitioner a fair trial; each responded no.  The court again denied the motion.  The court also denied defense counsel's request for an immediate psychiatric examination of petitioner.  It found he had made an articulate and extensive apology, and that all the court's observations of petitioner throughout the proceedings indicated he was sane (N.T. 3/6/03, 9-13).

Petitioner continued to control himself and was on good behavior throughout trial, at which he did testify (N.T. 3/7/03, 40-97).  In its closing instructions to the jury, the court stated:

> Prior to the start of this trial when we were going through the jury selection process you may have observed an outburst by the defendant and his subsequent restraint. You are to totally disregard any outburst or any restraint that had to be placed on the defendant. This outburst and restraint was not evidence. It was not anything that was produced from this witness stand. And the fact that there was an outburst and that restraint had to be used shouldn't enter into your deliberations. The outburst and the restraint I instruct you aren't to be held against the defendant and cannot be, and cannot enter into your deliberations regarding guilt or innocence because it was not evidence that came from the witness stand.

26

> You are bound by that standard. Only the evidence produced from wit-
> nesses who took the witness stand as to what they saw, what they heard, and what
> they did.

N.T. 3/10/03, 26-27.  (In addition to this specific curative instruction, the court also provided the

typical general instructions about evidence coming only from the witness stand, the presumption

of innocence, and the Commonwealth's burden of proof beyond a reasonable doubt, id. at 5-9.)

### B.      State-court history and analysis of the claim

In the trial court's May 30, 2003 opinion for direct appellate review, responding to this

claim, after referring to the transcript passages just reviewed (on which it relied primarily), the

court briefly explained that it had only utilized the temporary restraint during the first part of jury

selection as a "last resort," and that it was "the only way in which the court proceeding could

continue."  Trial court opinion (appended to Exhibit A) at 8-9.  The trial court's opinion cited the

ABA Standards for Criminal Justice on custody and restraint of defendants,[13] and Illinois v. Allen,

397 U.S. 337 (1970).[14]

---

[13] The non-binding ABA standard, numbered 4.1 in its proposed 1968 version, was subsequently
renumbered 15-3.1 (1980), then renumbered 15-3.2 (1996).  That version, in pertinent part, reads:

> (c) No defendant should be removed from the courtroom, nor should defendants
> and witnesses be subjected to physical restraint while in court unless the court has
> found such restraint necessary to maintain order. Removing a defendant from the
> courtroom or subjecting an individual to physical restraint in the courtroom
> should be done only after all other reasonable steps have been taken to insure or-
> der. In ordering remedial measures, the court must take all reasonable steps to
> preserve the defendant's right to confrontation of witnesses and consultation with
> counsel.
> (d) If the court orders physical restraint or removal of a defendant from the court-
> room, the court should enter into the record of the case the reasons therefor.
> Whenever physical restraint or removal of a defendant or witness occurs in the
> presence of jurors trying the case, the court should instruct those jurors that such
> restraint or removal is not to be considered in assessing the proof and determining
> guilt.

ABA Standards for Criminal Justice 15-3.2, "Control, restraint or removal of defendants and wit-
….(footnote continued on next page)….

The trial court also cited two state cases, <u>Commonwealth v. Africa</u>, 353 A.2d 855 (Pa. 1976) (restraints disfavored but per <u>Allen</u> are still permissible as a last resort within the trial judge's discretion), and <u>Commonwealth v. Kenney</u>, 463 A.2d 1142 (Pa. Super. 1983) (counsel found not ineffective for failing to object; contempt and gagging after fair warning for disruptive behavior during voir dire -- with restraints removed when then unnecessary to enforce good behavior, but reapplied after another outburst during trial -- was proper, within the court's discretion, and did not call for counsel objection or mistrial motion).   Trial court opinion (appended to Exhibit A) at 9.

---

nesses" (1996).

[14] In <u>Allen</u>, the Supreme Court considered "whether an accused can claim the benefit of [a Sixth Amendment] constitutional right to remain in the courtroom while at the same time he engages in speech and conduct which is so noisy, disorderly, and disruptive that it is exceedingly difficult or wholly impossible to carry on the trial." <u>Allen</u>, 397 U.S. at 338.  The Seventh Circuit had concluded that the state court had violated the habeas petitioner's rights under the Confrontation Clause by expelling him from the courtroom for misbehavior.  The Supreme Court reversed, examining the delicate trial-court task of balancing between keeping a disruptive defendant present in the courtroom but needing to restrain him, and denying his right to be present by removing him if he is too disruptive, making clear that such matters depend inherently on the myriad particulars before the live court, and are inherently in the trial court's discretion.  The <u>Allen</u> Court found the circuit court's reliance on "broad dicta" from prior Supreme Court cases was error.  <u>Id.</u> at 342.  Instead, the Supreme Court found:

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.

<u>Id.</u> at 343-44.  The Court added:  "binding and gagging might possibly be the fairest and most reasonable way to handle a [disruptive] defendant." <u>Id.</u> at 344.

On direct appeal, citing only the state case of <u>Africa</u>, petitioner simply contended that the trial court had abused its discretion, arguing that less severe options should have occurred before the restraints.  Without other citation, he stated that this denied him a fair trial.  He flatly and without elaboration disagreed with the trial court, stating, "The binding and gagging of Naranjo was not the last resort available to the Court and was not the only way in which the court proceeding could continue."  Exhibit A at 15.

The Superior Court found that the trial court had not abused its discretion.  Exhibit B at 4-7.  Although acknowledging that restraints are strongly disfavored, it found using them was within the court's discretion to maintain order.  Exhibit B at 4-5 (citing <u>Africa</u>; <u>Commonwealth v. Jasper</u>, 610 A.2d 949, 955 (Pa. 1992) (no abuse of discretion in ordering Jasper to wear ankle shackles during penalty hearing for security reasons); and <u>Commonwealth v. Pezzeca</u>, 749 A.2d 968, 970 (Pa. Super. 2000) (counsel not ineffective for failing to request curative instructions regarding leg shackles)).  Before restraints were applied in this instance, the trial court had observed Naranjo repeatedly delay the proceedings and express his intent not to cooperate.  He was acting unpredictably.  The trial court had provided counsel extra opportunities to consult with him and, before the jury was brought in, had specifically warned him not to disrupt court or restraints would be applied.  After the jury was brought in, petitioner then chose to curse, yell racial epithets, and shout at the judge.  The Superior Court also observed that the trial court ordered the restraints removed out of the presence of the jury as soon as petitioner indicated he would cooperate; questioned each potential juror about whether anything he or she had seen or heard would have a negative impact on his or her ability to be a fair and impartial juror; and provided a cautionary jury instruction at the close of trial.  The Superior Court found the brief gagging and shackling "reasonable under these circumstances, and we discern no abuse of the trial court's

discretion in so ordering."  Exhibit B at 6 (citing <u>Kenney</u>, <u>Jasper</u>, and the post-trial capital direct

appeal case of <u>Deck v. Missouri</u>, 544 U.S. 622 (2005)).  Moreover, the court found no prejudice:

"We simply perceive no prejudice to [petitioner] under the circumstances."  Exhibit B at 7.


### C.      Federal habeas relief must be denied.

The state-court denial of this claim did not unreasonably apply the relevant United States

Supreme Court holdings beyond all possibility for fair-minded disagreement.  Thus, habeas relief

must be denied.

As the Sixth Circuit has found in the context of § 2254 review of a non-capital voir dire

shackling, "The Supreme Court has never indicated … that its proscription against shackling ap-

plies as early as voir dire, a stage at which double jeopardy has yet to attach." <u>Keys v. Booker</u>,

798 F.3d 442, 455 (6th Cir. 2015) (rejecting relief under AEDPA for that reason).  That, in and of

itself, is sufficient to demonstrate that habeas relief must be denied here.  Where there is no

clearly established Supreme Court precedent, it obviously cannot be held that the state court un-

reasonably applied this non-existent law.  But there is more.

Even if it did apply to voir dire, the trial court here complied with the constraints that ap-

ply to trial.  The Constitution sometimes permits physical restraints for security or other reasons,

including to keep order in the court.  Certainly, as the <u>Allen</u> Court stated, "no person should be

tried while shackled and gagged except as a last resort." <u>Allen</u> at 344.  And that, as the Supreme

Court found two years after Naranjo's trial in the case cited by the Superior Court, is a basic fea-

ture of due process:  "the Fifth and Fourteenth Amendments prohibit the use of physical re-

straints visible to the jury absent a trial court determination, in the exercise of its discretion, that

they are justified by a state interest specific to a particular trial." Deck v. Missouri, 544 U.S. at 629.

But here, there was such a determination before the 2003 trial, clearly on the record, and, as the trial court found, and as demonstrated by that record, this was a "last resort," satisfying Allen. The record plainly supports the trial court's careful exercise of its discretion after ample warnings and extreme provocation by petitioner. The court took measures to minimize any prejudice. The shackling was for a brief period – only while necessary to keep order and permit voir dire to continue – before trial; that limited time period, individual voir dire, and appropriate jury closing instructions, minimized any impact of it. The restraints were not seen by the entire jury – only the first eight selected jurors, one of whom did not serve. N.T. 3/6/03, 13. The state courts acted reasonably in finding this not to be an abuse of discretion.

Deck was a capital matter on direct appeal, unlike the present non-capital federal habeas case. Its holding was limited: "courts cannot routinely place defendants in shackles or other physical restraints visible to the jury during the penalty phase of a capital proceeding…." Deck, 544 U.S. at 633. There, shackles were applied at the penalty phase, without any reason -- simply as a matter of routine. As the court found, given the prejudicial effect of shackles, "due process does not permit the use of visible restrains if the trial court has not taken account of the circumstances of the particular case." Id. at 632. But, of course, here, the trial court did consider the circumstances, and this was not a capital penalty phase, but a non-capital portion of voir dire.

It was also reasonable of the Superior Court to find that no prejudice arose from the brief restraint. Although some courts have misread Deck to state that no prejudice need be shown if any shackling whatsoever occurs, that is not what it says. The relevant quote – in that capital penalty phase context – is: "[W]here a court, *without adequate justification*, orders the defend-

ant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation." Deck, 544 U.S. at 635. (And again, that would be after jeopardy attaches, not during voir dire.) Here, there was adequate justification. As the Sixth Circuit found in Keys, a brief viewing of shackling inside the courtroom in a non-capital context still requires a showing of prejudice, even post-Deck, and certainly on habeas review of pre-Deck cases such as this one. Keys at 455-456.

There was no prejudice here, and any error here was altogether harmless. See Lakin v. Stine, 431 F.3d 959, 963 (6th Cir. 2005) (denying habeas relief where shackling error was harmless). The restraints were applied only for a brief time. The entire jury was not affected. There was individualized voir dire, a jury instruction, and overwhelming evidence of petitioner's guilt. Thus, there was no substantial and injurious effect or influence on the verdict obtained. Brecht. Even where such a jury instruction was meant to be given but was not, a state court denial of such a claim has been found reasonable. Keys, 798 F.3d at 453-54 (petitioner shackled for 90 minutes during voir dire; AEDPA relief denied).[15]

Some post-Deck courts, elaborating on federal supervisory standards (which do not apply to state courts, though they may have their roots in the Constitutional standards that do), have suggested that before such restraints are implemented, there should be a hearing, where the court should consider alternatives and enter scrupulous findings of fact and conclusions of law, specific to the case, before finding restraints are necessary. See e.g., United States v. Brantley, 342 Fed.

---

[15] See also "Propriety and prejudicial effect of gagging, shackling, or otherwise physically restraining accused during course of state criminal trial," 90 A.L.R.3d 17, esp. §10 (Prevention of disruption of trial). A review of the myriad circumstances found in the cases reviewed there demonstrates the proper exercise of discretion by the trial court in this case and the reasonableness of the state courts' denial of relief here.

Appx. 762, 767-770 (3d Cir. 2009) (not precedential).  But this is not a Constitutional require-ment.  See Keys.

Deck seems also to imply that the trial court must make and articulate specific findings about the need for shackling.  That was not the law at the time of this trial, and, similarly, is not required of state courts even now.  But even if it had been the law and did apply to state courts, the trial court here did, in a fashion, make findings, in its anteroom consultation with both attor-neys and the translator.  The record itself suffices to demonstrate the need, and the trial court elaborated in its opinion.  Although the trial court in 2003 may not have handled the matter in the same manner that a federal court under federal supervisory standards might today, or may not have written its opinion for appellate review in the way the federal courts may wish, its denial of this claim -- its result -- plainly did not unreasonably apply the holdings of United States Su-preme Court cases at the time of its decision.  Greene, supra.  That is all that is required under AEDPA.  Richter, 562 U.S. at 98-99.

The state courts' denial of this claim was reasonable.  Thus, habeas relief must be denied.


**2.    The state law claim that the trial court erred in failing to appoint a new attorney is not cognizable on habeas review, and is defaulted and meritless in any event.**

The trial court did not err or otherwise abuse its discretion by refusing to replace appoint-ed counsel with a different appointed attorney, and this claim is not reviewable, for several rea-sons.  Petition (ECF doc. 1) at form page 10 (ground two).  Habeas relief must be denied.

This was and is a claim under state law, both in state court and here in federal court.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle, 502 U.S. at 67-68.  Accordingly, this claim is non-cognizable in habeas.

If petitioner had stated a federal basis today, the federal claim would remain non-reviewable, since in state court, this was presented exclusively as a violation of state law, so any federal basis would be procedurally defaulted.

The facts of this claim are detailed in the first claim's description of these intertwined pretrial matters; the trial court repeatedly inquired and found trial counsel, David Santee, Esq., a member of the local public defender's office (assisted by several other and more senior supervising members of that office, working as a team), was effective and acting in petitioner's best interests, and there was no cause to replace appointed counsel.  Petitioner raised this state-law claim on direct appeal, listing his many particular pretrial complaints about counsel as narrated above, adding a claim of ineffectiveness for failing to call alibi witnesses (concerning the facts pertaining to that claim below), and asserting that the trial court had abused its discretion in denying his request to replace that team of appointed counsel public defender attorneys with a different appointed counsel, prompting petitioner's disruptive outburst.  Exhibit A at 13-14.  Petitioner's brief deceptively only described Mr. Santee as his attorney; it entirely excluded reference to the several other members of the public defenders' office representing him (most prominently, Mr. Gay, who was supervising Mr. Santee, had met with petitioner, and had assisted in preparing the case).  Petitioner cited only one case, Commonwealth v. Perry, 644 A.2d 705 (Pa. 1994) (counsel ineffective in capital case), for the proposition that failing to interview a defendant before trial and failing to prepare is ineffectiveness.  He did not even assert, much less support the proposition, that Assistant Defender Santee, or the other attorneys from his office involved in this case, were actually unprepared or even had failed to interview him before trial, but merely implied that.  Petitioner similarly did not offer any support for his assertion that the trial court had abused its discretion.

The Superior Court, responding to the state-law claim presented to it, found the trial court had not abused its discretion under state law in refusing to replace court-appointed counsel with a different court-appointed counsel, after finding the public defender's office, and Mr. Santee in particular, were representing petitioner well and effectively, and that petitioner's several particular complaints had no basis.  It added that any complaints of ineffectiveness would be deferred to the PCRA phase of review, per state law.  Exhibit B at 7-8.

That was reasonable.  As the Superior Court found, under state law, a defendant who, at public expense, seeks court-appointed counsel does not have a right to choose the particular attorney to represent him.  Commonwealth v. Rucker, 761 A.2d 541, 543 (Pa. 2000), citing Commonwealth v. Moore, 633 A.2d 1119, 1125 (Pa. 1993); Commonwealth v. Johnson, 236 A.2d 805, 807 (Pa. 1968).  Nor, after counsel has been appointed, may a defendant change to other assigned counsel absent a compelling and substantial reason, i.e., good cause. Pa.R.Crim.P.  122(C)(2). Rucker, 761 A.2d at 543.  The grant of a request for change of court-appointed counsel lies within the sound discretion of the trial court.  Commonwealth v. Williams, 522 A.2d 1058, 1061 (Pa. 1987).  As the Superior Court found, the trial court followed this law, analyzed the requests, and found no legitimate reason for appointing different counsel.  It did not abuse its discretion, and that, being a state-law claim, is not cognizable on federal habeas.  Estelle.  See Morris v. Slappy, 461 U.S. 1 (1983) (reversing Ninth Circuit on habeas review; finding no denial of right to counsel in trial court's exercise of its discretion to deny motion to replace appointed counsel with another, and no federal right to a "meaningful" attorney-client relationship).

Even if this somehow had been a federal claim both in state court and today, it still would only warrant denial.  Though it does not apply in federal habeas review of state court cases, nonetheless federal supervisory law is in accord with the approach followed by the state courts,

which shows that it is not unconstitutional; no holding of the United States Supreme Court was unreasonably applied by the state courts' denial of this claim.  See, e.g., United States v. Gillette, 738 F.3d 63, 78 (3d Cir. 2013); United States v. McNeil, 561 Fed. Appx. 162 (3d Cir. 2014); United States v. White, 320 Fed. Appx. 120 (3d Cir. 2008); United States v. Mangual-Corchado, 139 F.3d 34 (1st Cir. 1998); United States v. Tajeddini, 945 F.2d 458 (1st Cir. 1991) (all applying federal supervisory law to uphold trial courts that followed same procedure as here in denials of requests to replace appointed counsel).

The trial court made the proper inquiries and was justified in denying petitioner's request for substitute appointed counsel.  See Fischetti v. Johnson, 384 F.3d 140, 145-146 (3d Cir. 2004) (upholding, on habeas review, trial court's forcing petitioner to represent himself after denying his request for appointed counsel; although court viewed that as error, it was neither contrary to nor an unreasonable application of United States Supreme Court holdings; trial court would have been justified in ordering him to proceed with his competent and diligent third appointed counsel rather than appointing a fourth).

Thus, even if it were cognizable and exhausted, this claim would have to be denied.


**3.    The claim that PCRA counsel was ineffective for abandoning the claims that trial counsel was ineffective for supposedly (a) not interviewing petitioner prior to trial, (b) not investigating or discussing defense options, (c) not preparing for trial, and (d) being inexperienced, is non-cognizable; the trial counsel claims are defaulted and lack merit.**

Petitioner's third habeas claim (the first in his amended petition) is that PCRA counsel was ineffective for failing to pursue the several claims of trial counsel ineffectiveness that peti-

tioner articulated pre-trial when complaining that he wanted replacement appointed counsel.[16] Amended Petition (ECF doc. 25-2) at form page 8 and reverse (ground one) (ECF pages 17-18 of 36); Memorandum of Law (ECF doc. 23) at 37-46 (ECF pages 43-52) (claim A).   These claims are not cognizable in habeas.   AEDPA specifically provides:   "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."   28 U.S.C. § 2254(i).

It seems petitioner means to assert these as several trial counsel ineffectiveness claims, which, as he acknowledges, are procedurally defaulted.   He asserts that PCRA counsel was ineffective in the manner in which she pursued them, causing default, and that this excuses their default under Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309 (2012).   He is wrong.   It is he himself who caused their default, not PCRA counsel.   Martinez does not apply.

## A.     Exhaustion, default, and Martinez

The habeas statute requires that before a state prisoner may obtain federal habeas review of a claim, he must first exhaust the remedies available in the state courts as to that claim.   28 U.S.C. § 2254(b)(1)(A); Anderson v. Harless, 459 U.S. 4 (1982).   This rule requires petitioner to have fairly presented the same claim he presents in federal habeas to the state courts first, including to appellate courts.   O'Sullivan v. Boerckel, 526 U.S. 838 (1999) (state prisoner must present habeas claims to state courts using normal established process of appellate review); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).   If a petitioner has not fairly presented a claim to the state courts – or has failed to raise the allegation before those courts properly under the state's applicable claim-preservation rules (as petitioner did here when he presented it to a trial-

---

[16] It is improper to group multiple claims like this.   Habeas claims are to be stated separately and individually.   In any event, these several claims will be analyzed as a group, as they always have been, for the sake of efficiency.

level court but not to an appellate court) – and is precluded from returning to the state courts to exhaust that claim, the previously unexhausted claim is deemed technically "exhausted," even if the state courts have not had the opportunity to pass on its merits.   See 28 U.S.C. § 2254(b)(1)(B)(i); Gray v. Netherland, supra.   In that case, federal review of the claim is nevertheless precluded if the "prisoner has defaulted his federal claim[] in state court pursuant to an independent and adequate state procedural rule."  Coleman v. Thompson, 501 U.S. 722, 749 (1991) (unexhausted federal claims that would no longer be reviewable in state courts, under adequate and independent state law grounds, are procedurally defaulted).  See House v. Bell, 126 S.Ct. 2064, 2068 (2006) ("Out of respect for the finality of state-court judgments federal habeas courts, as a general rule, are closed to claims that state courts would consider defaulted").  In that event, the claims are procedurally defaulted in federal habeas.

The PCRA's jurisdictional one-year statute of limitations (which also bars successive petitions not filed within the same one-year period), 42 Pa.C.S. § 9545(b)(1), is an adequate and independent state ground that precludes habeas review. "It is now clear that this one-year limitation is a jurisdictional rule that precludes consideration of the merits of any untimely PCRA petition, and it is strictly enforced in all cases, including death penalty appeals." Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002).  It precludes petitioner from returning to state courts to exhaust further claims.

It makes no difference whether state courts have or have not specifically ruled that claims are defaulted.  "The adequacy of a state ground, of course, does not depend on an appellate decision applying general rules to the precise facts of the case at bar."  Lee v. Kemna, 534 U.S. 362, 382 n.13 (2002).  There is no necessity for the state court to actually apply a settled procedural bar, like the PCRA time-bar, to a particular habeas claim before a federal court may

determine that no state remedy exists.  E.g., Coleman v. Thompson, 501 U.S. 722, 735 n.1 ("if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement *would* now find the claims procedurally barred...there is procedural default") (emphasis added); Teague v. Lane, 489 U.S. 288, 299 (1989) (federal court may find claim procedurally defaulted notwithstanding state court's failure to invoke procedural rule, where claim was not presented to state court).  "[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."  Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998).  See also, e.g., O'Sullivan, supra; Lines v. Larkins, 208 F.3d 153, 162-66 (3d Cir 2000).

A federal court should thus dismiss a claim as procedurally defaulted if the claim has not been exhausted and state law would unambiguously bar it from being exhausted now. Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995).  That is the situation with this claim (i.e., group of claims).

If a petitioner's claim is procedurally defaulted, federal review of it may nonetheless occur if the prisoner shows "cause for the default and actual prejudice," or that the federal court's "failure to consider the claim will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 749; see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (prisoner is required to demonstrate cause for his state-court default, and prejudice therefrom, before federal habeas review may proceed).  Petitioner can show neither.

The "miscarriage of justice" exception requires petitioner to come forward with new evidence of his actual innocence.  See, e.g., Schlup v. Delo, 513 U.S. 298, 321 (1995); Calderon

v. Thompson, 523 U.S. 538, 559 (1998) (to demonstrate actual innocence sufficient to excuse procedural default, petitioner must rely upon "reliable evidence not presented at trial" to show "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence").[17] That applies only in exceedingly rare cases. This is not one of them.

The existence of "cause" for a procedural default "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Once petitioner shows cause, he bears the additional burden of proving that prejudice resulted. Prejudice means the errors at trial "worked to [Petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494 (quoting U.S. v. Frady, 456 U.S. 152, 170-172 (1982)). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." Coleman, 501 U.S. at 753 (emphasis omitted). Generally, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" Id. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). Further, claims of ineffective assistance of counsel cannot constitute "cause" for a default unless the petitioner first raised and exhausted those claims themselves in the state courts. Id.; Edwards, supra.

In Martinez v. Ryan, 566 U.S. 1, 132 S. Ct. 1309 (2012), the Supreme Court considered "whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding."

---

[17] The miscarriage of justice exception applies only in extraordinary circumstances and is appropriate only when actual innocence is established, rather than legal "innocence." Sawyer v. Whitley, 505 U.S. 333, 339 (1992). Here, petitioner is both actually and legally guilty.

Martinez, 132 S.Ct. at 1315.[18]  Such an approach had previously been barred by Coleman v. Thompson, 501 U.S. 722, which made clear that alleged ineffective assistance of counsel on state collateral review could not establish "cause" for excusing the procedural default of a habeas petitioner's underlying constitutional claims, since there is no right to counsel on collateral review.

Contrary to petitioner's misunderstanding, memorandum at 25, Martinez is based on principles of equity rather than a constitutional rule.  See Martinez, 132 S.Ct. at 1319-20 (discussing differences between "a constitutional ruling and the equitable ruling of this case"). Ostensibly without overruling Coleman itself, Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (prisoners have no constitutional right to counsel in collateral, i.e., PCRA, proceedings; right to counsel extends to direct appeal "and no further"), or contravening 28 U.S.C. § 2254(i) (collateral ineffectiveness non-cognizable in federal habeas), the Court in Martinez recognized an equity-based "narrow exception" to the Coleman rule by holding that although there is still no Constitutional right to effective assistance of counsel in collateral proceedings, nonetheless, "[i]nadequate assistance of counsel at initial-review collateral proceedings *may* establish cause for procedural default of a claim of ineffective assistance at trial."  Martinez, 132 S.Ct. at 1315 (emphasis added).  The holding was explicitly limited to ineffectiveness at the PCRA-court level, however:  "The rule of Coleman governs in all but the limited circumstances recognized here.

---

[18]  The term "initial-review collateral proceeding" means the first time an ineffective assistance claim can be reviewed.  As of 2002, as announced in Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002), Pennsylvania does require waiting until collateral review, i.e., PCRA, to raise ineffectiveness claims, with minor exceptions, and is thus generally an "initial review collateral proceeding" juris-diction within the meaning of Martinez.  Before 2002, it was not such a jurisdiction, since it then required that ineffective assistance claims be raised at the first opportunity when a petitioner was represented by an attorney different than the one who was being accused of ineffectiveness, even if that was on direct appeal, on pain of waiver.  See Commonwealth v. Hubbard, 372 A.2d 687, 695 n.6 (Pa. 1977).

The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." Martinez, 132 S.Ct. at 1320.

The error that caused the default in petitioner's case, however, was on PCRA appeal. That is not subject to the Martinez exception to the rule of Coleman.

Under Martinez, a claim of PCRA counsel ineffectiveness during initial state collateral review can only qualify as "cause" to excuse the default of a trial counsel ineffectiveness claim if: (1) state law required waiting until post-conviction review to raise claims under Strickland v. Washington, 466 U.S. 668 (1984);[19] (2) the underlying Strickland claim against trial counsel is a "substantial one", meaning that it "has some merit", which requires a review of the unreviewable claim in order to see if the merits will be reviewed; and (3) it is shown that PCRA counsel was ineffective, under the Strickland standard, for failing to accuse trial counsel of being ineffective, or for doing so in a faulty way. Martinez, 132 S.Ct. at 1315, 1318-19.

Once there is an opportunity for review of claims of PCRA counsel ineffectiveness, however, the equities tip in favor of precluding new claims that the state courts did not review but could have, had they been presented. This fits with the long-settled principle that before a claim of ineffectiveness may be raised as "cause" for a default in federal habeas, the ineffectiveness claim itself first must be exhausted in state court. E.g., Edwards v. Carpenter, 529 U.S. 446, 451-54 (2000); Murray v. Carrier, 477 U.S. 478, 489 (1986). Accordingly, for any allegation that PCRA counsel was ineffective to constitute "cause" under Martinez, the claim of PCRA counsel ineffectiveness must itself have been presented to the state courts in available

---

[19] See also Trevino v. Thaler, 133 S.Ct. 1911 (2013) (Martinez applies where, although state law ostensibly permitted prisoner to litigate trial counsel ineffectiveness claim on direct appeal, it was "virtually impossible," as a practical matter, to obtain review of it).

state proceedings following the denial of PCRA relief.

Pennsylvania provides a right under the Constitution of the Commonwealth to effective assistance of post-conviction counsel, though that state-law rule is not mandated by the federal constitution, and permits prisoners to accuse PCRA counsel of being ineffective.  See Commonwealth v. Albrecht, 720 A.2d 693, 700 (Pa. 1998); Martinez v. Ryan, supra; Finley, 481 U.S. at 555.  If petitioner believed PCRA counsel's failure to raise these trial counsel ineffectiveness claims in his amended PCRA petition constituted ineffective assistance, he could (and should) have brought such a state-law claim promptly in the PCRA court – as many other PCRA petitioners have done.  The PCRA court would then have examined whether PCRA counsel was ineffective.  But, as far as respondents can discern, he did not.  Thus, his PCRA counsel ineffectiveness claim is not exhausted under Edwards.

Because it is itself defaulted, the PCRA counsel ineffectiveness claim cannot excuse the default of the trial counsel ineffectiveness claims under Martinez.  See Edwards v. Carpenter, 529 U.S. 446, 452-454 (2000) (a claim of ineffective assistance of counsel, asserted as "cause" for the default of another claim, can itself be procedurally defaulted if not presented to the state courts) (followed by Tome v. Stickman, 167 Fed. Appx. 320, 325 (3d Cir. 2006) (non-precedential)).  See also McIntyre v. McKune, 480 Fed. Appx. 486, 489 n. 3 (10th Cir. May 9, 2012) (non-precedential) (Martinez argument rejected where claim of post-conviction counsel ineffectiveness was itself defaulted).  The claim of PCRA counsel ineffectiveness should not be considered, even as a default excuse, if it is not itself exhausted.  Petitioner's failure to exhaust it further demonstrates that PCRA counsel was in fact effective.

Under Martinez, petitioner must show that post-conviction counsel's course of conduct was ineffective under Strickland.  Martinez, 132 S.Ct. at 1318.  This requires a demonstration

that post-conviction counsel's strategy was such that *no* competent attorney would have followed

it and that there is a reasonable probability that, "but for counsel's unprofessional errors, the

result of the proceeding" — in this context, the state PCRA proceeding — "would have been

different." Strickland, 466 U.S. at 697, 694.[20]

Petitioner cannot show that here. In Martinez, the Court had before it a situation where

collateral counsel had filed a petition that petitioner *did not even know about*, and then filed the

equivalent of a Finley letter, certifying that she could find no meritorious claims. That attorney

---

[20] Strickland imposes a "highly demanding" standard upon a petitioner to prove the "gross incompetence" of his counsel. Kimmelman v. Morrison, 477 U.S. 365, 382 (1986). It is only the "rare claim" of ineffective assistance of counsel that should succeed. Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999) ("Because counsel is afforded a wide range within which to make decisions without fear of judicial second-guessing, we have cautioned that it is 'only the rare claim of ineffectiveness that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.'"), quoting U.S. v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

Under Strickland, counsel is presumed effective, and it is petitioner's burden to overcome that presumption by proving both (1) unreasonable performance, and (2) prejudice; without both, there is no ineffectiveness. To show the first, petitioner must prove counsel's conduct was so unreasonable that no competent lawyer would have followed it, and counsel "made errors so serious that counsel was not functioning as 'counsel' guaranteed ... by the Sixth Amendment." Strickland, 466 U.S. at 687. To show the second, a petitioner must prove that "counsel's errors were so serious as to deprive [the petitioner] of a fair trial, a trial whose [sic] result is reliable." Id. That is, a petitioner must demonstrate a reasonable probability that but for counsel's professional derelictions, "the result of the proceeding would have been different." Id. at 694. Courts must also assume (absent grounds to the contrary) "that the judge or jury acted according to law." Id. Moreover, courts must make this determination in light of "the totality of the evidence before the judge or jury." Id. at 695.

Further, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. The inquiry must determine whether the petitioner received a fair trial, not whether counsel was prudent, appropriate, or perfect. Marshall v. Hendricks, 307 F.3d 36, 91 (3d Cir. 2002). It is "all too tempting" for a petitioner to second-guess counsel after the fact and "all too easy" for a court to deem a particular act or omission unreasonable merely because counsel's overall strategy did not achieve the result his client hoped for. Id.; see also Yarborough v. Gentry, 124 S.Ct. 1, 5 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight"); Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (Strickland adopted "the rule of contemporary assessment" because it recognized "from the perspective of hindsight there is a natural tendency to speculate as to whether a different trial strategy might have been more successful").

caused an utter preclusion of all collateral review.  Petitioner is in an entirely different situation

that is nowhere close to being akin to <u>Martinez</u>.  It was petitioner himself who filed his PCRA

petition, which he knew about.  PCRA counsel filed a <u>Finley</u> letter that was served on petitioner

which reviewed petitioner's claims and explained why they lacked merit.  That preserved those

claims for appellate review.  That is certainly effective.

Petitioner raised these several trial counsel ineffectiveness claims in his <u>pro</u> <u>se</u> PCRA pe-

tition.  In her no-merit <u>Finley</u> letter, PCRA counsel rightly found that petitioner had failed to al-

lege or show <u>Strickland</u> prejudice for any of them, and thus, these allegations failed.  Exhibit C

(<u>Finley</u> letter) at 4-5.

As explained in the procedural history above, petitioner then overwhelmed the state

courts with his endless and multiple <u>pro</u> <u>se</u> statements of claims to be raised on his <u>pro</u> <u>se</u> PCRA

appeal, not to mention his lengthy <u>pro</u> <u>se</u> brief (Exhibit D).  He was lucky that due to various as-

pects of the case, the Superior Court did not find all his claims waived on the PCRA round of

review, as the PCRA court had done, but reviewed one of his several Rule 1925(b) statements

and the claims as argued in the brief that was attached as Exhibit F to his brief.  That set of

claims did not, however, contain this "one" (actually, group of several).  Exhibit E (Superior

Court 2013 opinion).

Thus, the failure to pursue these claims of trial counsel ineffectiveness on the PCRA

round of state appeal cannot be blamed on anyone but petitioner himself.  Unlike trial counsel

ineffectiveness claims to which <u>Martinez</u> might arguably pertain, these several claims were not

defaulted at the PCRA-court level by PCRA counsel.  Petitioner raised them in his <u>pro</u> <u>se</u> PCRA

petition, and PCRA counsel analyzed their lack of merit in her <u>Finley</u> letter, so they were pre-

served there.  Had petitioner himself raised them properly on his <u>pro</u> <u>se</u> appeal, they would have

been reviewed on appeal, but he did not.  That is his own fault.  The fact that this default oc-

curred on PCRA appeal rather than at the PCRA trial-court level means that <u>Martinez</u> does not

apply.  <u>See</u> <u>Martinez</u>, 132 S.Ct. at 1316, 1320; <u>Norris v. Brooks</u>, 794 F.3d 401, 405 (3d Cir. 2015)

(trial counsel ineffectiveness claim defaulted not at the PCRA level but on PCRA appeal is not

excusable via <u>Martinez</u>); <u>Bibbs v. Glunt</u>, No. 14-cv-5649, 2016 WL 5539758, at *7 (E.D. Pa. Apr.

13, 2016) (Report and Recommendation of Magistrate Judge Lynne A. Sitarski), approved and

adopted, 2016 WL 5660478 (E.D. Pa. Sept. 27, 2016) (Stengel, J.), Certificate of Appealability

denied January 31, 2017, 3d Cir. No. 16-3983; petition for en banc and panel rehearing denied,

2/27/17 (appointed PCRA counsel preserved claim by explaining why it lacked merit in <u>Finley</u>

letter; default occurred when petitioner then failed to pursue it on <u>pro</u> <u>se</u> PCRA appeal; <u>Martinez</u>

did not apply).

The PCRA ineffectiveness claim is not cognizable, and the defaulted trial counsel ineffec-

tiveness claims may not be reviewed.  In any event, they each obviously lack merit, as the trial

court concluded in denying petitioner's pretrial requests for replacement counsel based on these

groundless complaints.  <u>See</u> 28 U.S.C. § 2254 (b)(2).  Habeas relief must be denied.


**4.      The state courts reasonably denied the claim that all prior counsel were ineffective
for failing to adequately investigate, develop, and present an alibi defense, and for
failing to seek instructions directing jurors not to infer guilt based on his failure to
prove his alibi.**

Petitioner's next claim is another conglomeration of accusations against different indi-

viduals for multiple things, rather than a proper single claim.  He accuses all prior counsel of be-

ing ineffective for failing to prepare his purported alibi defense, and for failing to seek jury in-

structions when he failed to prove that alibi.[21]   Amended Petition (ECF doc. 25-2) at form page

10 and reverse (ECF pages 22-23) (ground two); Memo (ECF doc. 23) at 47-64 (ECF pages 53-

70), Claim B.  Unlike the last claim, petitioner raised this (or at least a related claim) not only in

his pro se PCRA petition, but also on PCRA appeal; thus, the claim he raised in state court is

therefore exhausted.  Respondents will assume the claim today is the one exhausted in state court.

To the extent petitioner is claiming something different in federal court, that new issue is default-

ed and unreviewable.  The state courts acted reasonably in denying the claim presented to them,

and habeas relief must therefore be denied.

### A.      Factual background regarding alleged alibi

During his testimony, petitioner claimed he was not in Philadelphia, but in Lancaster,

Pennsylvania, when his ex-girlfriend was almost murdered by a person she and her neighbor had

testified was petitioner.  N.T. 3/7/03, 40-68.  The prosecutor was surprised by this and immedi-

ately objected in an anteroom conference that the defense had failed to provide a notice of alibi,

contrary to the requirements of state law.  Petitioner's counsel (Mr. Santee and Mr. DiMaio) took

the novel and erroneous position that they were not required to provide a notice if the only per-

son testifying to the alibi was petitioner himself, and that is why they had not filed it, even

though they had known that petitioner would give that alibi testimony.  Discussion was deferred

on that matter, with the court asking both sides to provide cases.  N.T. 3/7/03, 69-72.

Petitioner continued to testify that he was with Alberto Cruz in Lancaster at the time his

ex-girlfriend had testified he was slicing her face and almost killing her.  Id. at 81-83.  The pros-

ecutor examined petitioner on a statement he gave police a week after the incident in which he

said nothing about any such alibi, then later called a Detective, and a Spanish-speaking officer,

---

[21] This claim is related to claim 6, answered below.

who had together taken that statement.  The officers confirmed that petitioner had said nothing about being in Lancaster at the time.  Id. at 85-91, 97-102, 103-105.  The defense elicited testimony that petitioner had been unable to contact Cruz.  Id. at 96.

At the later, deferred legal discussion in the anteroom regarding the lack of alibi notice to the Commonwealth, having ensured both sides had had an opportunity to review Commonwealth v. Poindexter, 646 A.2d 1211, 1218 (Pa. Super. 1994), and Commonwealth v. Servich, 602 A.2d 1338, 1343 (Pa. Super. 1992), as well as the Pennsylvania Rules of Criminal Procedure formerly numbered 305, 306, and 307 (current Rules 567, 573, 578, and 579), the court announced it would follow that law, finding a violation of the alibi notice requirements.  Thus, the court ruled, per those cases and rules, it would refuse to provide an alibi instruction to the jury as a consequence for that violation.  During this discussion, defense counsel informed the court that petitioner had only provided a name and telephone number of one purported alibi witness (apparently Cruz), and based upon this scant information, the Defender Association had tried unsuccessfully to call him but had been unable to locate him.  Counsel asked that the jury be informed of that; the court denied the request.  Counsel later reiterated this, but in the plural, representing that petitioner had told them of witnesses, and again asking that the jury be so informed, but the court stood by its earlier denial.  N.T. 3/7/03, 108-114.

### B.      History of the claim

Petitioner raised this ineffectiveness claim in his pro se PCRA petition.  PCRA counsel found the claim lacked merit, representing that she had attempted to contact both Alberto Cruz and Jose Rodriguez in Lancaster, Pennsylvania, after petitioner had given her their contacts as the purported alibi witnesses he was accusing trial counsel of being ineffective for failing to investigate and call at trial.  But, like trial counsel, PCRA counsel was also unable to contact them,

or any other alibi witnesses, to support this claim.  Petitioner was thus unable to fulfill the state-law requirement that he provide affidavits from his purported alibi witnesses, to show that they would have been available and willing to testify for him at trial.  Furthermore, as PCRA counsel observed, the trial identification testimony of petitioner's ex-girlfriend was certain and corroborated by the identification testimony of the neighbor into whose house they both ran, and in whose kitchen petitioner sliced her face and neck, attempting to kill her.  Plainly, as PCRA counsel rightly found, petitioner had not satisfied the ineffectiveness standard.  Exhibit C (Finley letter) at 5-6.

Petitioner raised this claim in the typed PCRA-appeal brief that the Superior Court reviewed.  See Exhibit D at its Exhibit F (claim "D"), pages 22-29.  The Superior Court analyzed and denied the claim (along with the related claim numbered six in the instant habeas petition), finding it lacked merit.  Exhibit E at 17-20.

Specifically, the state court first found that petitioner's allegations that Mr. Cruz was available to testify to this alibi were contradicted by the representations of trial counsel on the record at trial (reviewed above, stating they had been unable to contact Mr. Cruz).  Exhibit E at 19.  Trial counsel had asked that the jury be informed that petitioner had given them names of alibi witnesses who could not be located and were thus unavailable (as reviewed above).  PCRA counsel had similarly been unable to contact the witnesses whose names petitioner gave them.  The Superior Court ruled that trial counsel was not ineffective for failing to file a notice of alibi as to witnesses who could not be located.  Exhibit E at 19.

A separate part of this claim asserted that trial counsel should have objected when the prosecutor allegedly committed misconduct in closing by discussing the testimony that showed petitioner had failed to provide his new, surprise, in-court alibi when giving his statement to the

police right after the crime, and by accurately stating that petitioner had failed to provide the Commonwealth with advance notice of the alibi testimony.  As the Superior Court also found, this was not prosecutorial misconduct, and counsel need not have objected.  Id. at 20.

Finally, regarding petitioner's claim that trial counsel was ineffective for failing to request an instruction that the jury could not infer guilt from his failure to prove his alibi:  the Superior Court found that petitioner could not establish Strickland prejudice, because his ex-girlfriend/victim and her neighbor both conclusively identified petitioner.  Id.

In denying this claim for lack of merit, the state court did not unreasonably apply Strickland.  Petitioner has never contested that his ex-girlfriend, who had a PFA against him, testified with certainty that he was the one who sliced her in the face – nor that his ex-girlfriend's neighbor similarly identified him in court.  There is no possible Strickland prejudice -- even aside from the fact that nobody has been able to contact the supposed witnesses he says exist.  See Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011) (state courts acted reasonably in finding Strickland claim lacked merit where Strickland prejudice prong could not be met regarding alibi ineffectiveness claim).  Habeas relief must be denied.


5.    **Petitioner's claims that the trial judge's jury instructions on the state crimes of aggravated assault, attempted murder, and recklessly endangering another person (REAP), denied him due process, are defaulted and non-reviewable.**

Petitioner's next claim is that certain jury instructions on several state crimes were faulty and thus denied him due process, and that trial counsel was ineffective for failing to object.  Amended Petition (ECF doc. 25-2) at form page 12 and reverse (ECF pages 25-26 of 36) (ground three); Memo (doc. 23) at 65-74 (ECF pages 71-80 of 162) (claim C).  This claim is procedurally defaulted and cannot be reviewed.

Petitioner raised this claim in his PCRA appeal brief.  See Exhibit F to Exhibit D at 15-21.  The Superior Court found that the jury instruction claim itself was waived because it could have been, but was not, raised promptly at trial, per 42 Pa. C.S. § 9544(b).  Petitioner had raised all his claims on PCRA appeal under an umbrella of ineffectiveness, however, so the claim was theoretically reviewable as underlying the ineffectiveness claim, found the Superior Court.  However, the ineffectiveness claim for failing to object to these allegedly defective instructions itself also needed to be specifically raised in the PCRA court to be preserved for review on appeal.  Petitioner had not included this ineffectiveness claim in his PCRA petition.  Moreover, he had not raised PCRA counsel ineffectiveness claim regarding this particular claim until after he was on appeal, which is too late, and he thus waived any PCRA counsel ineffectiveness claim about it as well.  Exhibit E at 16-17.

The state court's enforcement of this basic rule that also applies in federal courts -- that a claim cannot be raised for the first time on appeal -- was correct.  This is an independent and adequate state law procedural ruling giving rise to a procedural default.  Trevino v. Thaler, 133 S.Ct. 1911, 1917 (2013) ("a conviction that rests upon a defendant's state law 'procedural default' (for example, the defendant's failure to raise a claim of error at the time or in the place that state law requires), normally rests upon 'an independent and adequate state ground.' . . .  And where a conviction rests upon such a ground, a federal habeas court normally cannot consider the defendant's federal constitutional claim") (citation omitted); Peterson v. Brennan, 196 Fed. Appx. 135, 142 (3d Cir. Sept. 26, 2006) (not precedential).  See also Sistrunk v. Vaughn, 96 F.3d 666, 671 n. 4 (3d Cir.1996) ("the rules [of Pennsylvania's appellate procedure] dictate that an issue raised at the trial level but not preserved on appeal will not be considered by any subsequent appellate court").  See, e.g., Troutman v. Overmyer, 2015 WL 1808640 at *12 (E.D. Pa. April 12, 2015)

(adopted report and recommendation) (Reuter, M.J.) ("Case law has held that Pa. R. App. P. 302(a), and other similar state procedural waiver rules, are adequate and independent state rules for the purposes of procedural default") (collecting cases); Harris v. Kerestes, 2014 WL 7232358, at *15 (E.D.Pa. Dec. 17, 2014) (Sitarski, M.J.) (approved and adopted by Tucker, C.J.).  The underlying claims of jury instructions and and were waived, as were the claims of trial counsel and PCRA counsel ineffectiveness.  As such, they cannot act to excuse the default.  These claims are unreviewable.

They are also non-cognizable issues of purely state law.  The jury instructions were correct under state law.  And jury instructions are a classic matter of state law.  A federal court may consider a habeas corpus petition filed by a state petitioner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). For example, the "fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief."  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  A claim alleging a mere error of state law does not constitute a violation of due process, and thus, is not cognizable on federal habeas review.  See Engle v. Isaac, 456 U.S. 107, 121 (1982) (citing Gryger v. Burke, 334 U.S. 728, 731 (1948)); Pulley v. Harris, 465 U.S. 37, 41 (1984); Riley v. Harris, 277 F.3d 261, 310 n. 8 (3d Cir. 2001).


**6.     The claim that the trial court erred in not giving an alibi instruction is defaulted, and the state courts reasonably found counsel was not ineffective for failing to pursue that claim.**

Petitioner's next claim is that the trial court committed reversible error by refusing to give any type of alibi instruction after petitioner's violation of the state alibi notice rule, despite his having offered surprise testimony that he was in Lancaster at the time that his ex-girlfriend

had testified, and her neighbor confirmed, that he was slashing her face in Philadelphia.  Amend-

ed Petition (doc. 25-2) at form page 13 and reverse (ECF pages 28-29 of 36) (ground four);

memo (doc. 23) at 75-81 (ECF pages 81 to 87 of 162).[22]  This claim is defaulted as a stand-alone

claim, but, if reviewed as it was presented to the state courts (as part of an ineffectiveness group),

was reasonably denied by the state court and lacks merit.  Under state law, this remedy was well

within the trial court's discretion, but such matters of state law are not reviewable in federal ha-

beas.  Estelle.

　　　As explained above, the trial court denied this claim during trial, after consideration of

state case law at the time concerning the consequences for violations of the state alibi notice rule,

currently numbered 567, citing during the anteroom conference both Commonwealth v. Poindex-

ter, 646 A.2d 1211, 1218 (Pa. Super. 1994), and Commonwealth v. Servich, 602 A.2d 1338, 1343

(Pa. Super. 1992), for the proposition that denial of an alibi instruction is an appropriate sanction

well within the trial court's discretion under state law.  And as also explained above, claims of

trial court error must be preserved at trial and raised on direct appeal or are waived.

　　　This claim of trial court error was not raised on direct appeal.  On PCRA appeal, petition-

er presented it as part of his group of claims asserting ineffectiveness for all aspects of the alibi

matter, however (claim group 4 above).  See Exhibit D at its Exhibit F, pages 30-33 (claim E).

The Superior Court denied relief, explicitly finding counsel not ineffective for many particulars,

as explained above.  Exhibit E at 17-20.  As to this specific underlying allegation of trial court

error for choosing this sanction for petitioner's violation of the alibi notice requirements, after

acknowledging it as part of the ineffectiveness group numbered 4 above (the second in his

---

[22] This claim is related to claim 4, answered above.

amended petition), the Superior Court implicitly found counsel was not ineffective for this reason, either.  It did not make its reasoning explicit, but that is plain enough.

As explained above in the standard of review section, a denial on the merits of a fairly presented claim is entitled to AEDPA deference, whether denial is implicit or explicit.  It is the judgment, i.e., the result, of the state courts on the claim, and not its articulated reasoning, if any, that is the subject of habeas review.  28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 98-99.  Federal courts must presume that claims fairly presented to a state court and implicitly rejected by that court were "adjudicated on the merits." <u>Johnson v. Williams</u>, 133 S. Ct. 1088, 1096-1097 (2013). That remains true even if the state court issued no opinion or, if it did, said nothing about the federal claim.  <u>Richter</u>, 562 U.S. at 98-99.  <u>See</u> <u>also</u> <u>Woodford v. Visciotti</u>, 123 S.Ct. 357, 360 (2002) (under AEDPA's deferential standard of review, state court decisions must be given "benefit of the doubt").  The habeas statute "does not require that there be an opinion from the state court explaining the state court's reasoning." <u>Richter</u>.

Here, the trial court followed state law, and there is no reviewable error regarding that, due not only to <u>Estelle</u> but also the default of the underlying claim of trial court error presented today.  If somehow reviewed as a species of ineffectiveness, which is how it was presented to the PCRA court, this claim must be denied because in finding it meritless, the state courts acted reasonably.  Habeas relief must be denied.


**7.  The state courts reasonably found all prior counsel not ineffective for failing to complain about an alleged violation of a state rule concerning amendments when the prosecutor added an attempted murder charge.**

Petitioner's seventh claim is that all prior counsel were ineffective for failing to object to an alleged prosecutorial violation of Pennsylvania Rule of Criminal Procedure 564, governing

amendments of indictments, when the prosecutor added an attempted murder charge at the pre-liminary hearing, before issuance of the bills of information.  Amended Petition (doc. 25-2) at inserted pages after form page 13 (30 of 36) (ground five); memo (doc. 23) at 82-84 (ECF pages 88-90 of 162) (claim E).  The Superior Court acted reasonably when it found this claim lacked merit.  Exhibit E at 20-23.  Habeas relief must be denied.

8.      **The "trial court fraud" claim was reasonably denied.**

Petitioner's next claim is a repeat of his last.  Amended petition (Doc. 25-2) at inserted pages after form page 13 (ECF page 30 of 36) (ground six); Memo (Doc. 23) at 85-92 (ECF pag-es 91-98 of 162).  As the Superior Court found, "For identical reasons, Appellant's claim that the trial judge committed fraud by adding the attempted murder charge to the information on its own initiative is entirely devoid of merit."  Exhibit E at 23.  That was reasonable.  Habeas relief must be denied.

9.      **The state courts reasonably denied the claim that the trial court had given a faulty jury instruction on the crime of aggravated assault.**

Petitioner's last claim is that the trial judge committed error in its jury instruction on ag-gravated assault.  Amended petition (doc. 25-2) at 30 of 36 (ground seven); Memo (doc. 23) at 93-99 (99-105 of 162).  The Superior Court denied this as a repeated claim (cumulative of the claim numbered five, supra).  Exhibit E at 23.  That, too, was reasonable.  Habeas relief must be denied.

**WHEREFORE**, respondents respectfully request that the Petition for Writ of Habeas Corpus be denied and dismissed with prejudice and without a hearing.

Respectfully submitted,

/s
JOHN W. GOLDSBOROUGH
Assistant District Attorney
MAX C. KAUFMAN
Assistant Chief, Federal Litigation Unit

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ISAAC NARANJO                     :          CIVIL ACTION

   V.                              :

BRIAN COLEMAN, ET AL.             :          NO. 13-7383


**CERTIFICATE OF SERVICE**


I, JOHN W. GOLDSBOROUGH, hereby certify that on May 9, 2017, a copy of the fore-

going pleading was served by United States Mail, postage prepaid, upon:



Isaac Naranjo, #FJ-4369
State Correctional Institution at Graterford
P.O. Box 244
Graterford, PA  19426



/s_____
JOHN W. GOLDSBOROUGH
Assistant District Attorney
District Attorney's Office
Three South Penn Square
Corner of Juniper and S. Penn Square
Philadelphia, PA 19107-3499